IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDGARDO RODRIGUEZ - COLON,<br><br>Plaintiff,<br><br>v.<br><br>VEGETABLE JUICES, INC., and NATUREX, INC.,<br><br>Defendants. | Case No.<br>Judge<br>Magistrate Judge<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Edgardo Rodriguez - Colon (herein "Mr. Colon"), through his attorneys Barlow, Kobata & Denis, LLP, for his Complaint against Defendants Vegetable Juices, Inc. and NATUREX, Inc. (herein " Defendants"), states as follows.

### NATURE OF THE ACTION

1. This lawsuit arises under the Americans With Disabilities Act, as amended, 42 U.S.C. §12101 et seq. (herein, the "ADA"). Mr. Colon is a former employee of the defendants Vegetable Juices, Inc., and NATUREX, Inc. (herein "Defendants") at their Bedford, Illinois plant. Mr. Colon is seeking damages and injunctive relief to redress employment discrimination practices, Defendants' failure to accommodate him, and retaliation by the Defendants. An Illinois state law retaliatory discharge/wrongful discharge claim is also alleged.

### JURISDICTION

2. Federal jurisdiction arises under the provisions of the ADA, and federal question jurisdiction, 28 U.S.C. §1331 and §1343. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 based on federal question jurisdiction.

1

3. This lawsuit also arises under the Illinois common law based on the retaliatory and wrongful discharge of Mr. Colon because he filed a worker's compensation claim. There is supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. §1367.

**VENUE**

4. Pursuant to 28 U.S.C. §1391, venue lies in the Northern District of Illinois in that Mr. Colon is a resident in this District, Defendants engaged in a business in this District at their Bedford, Illinois plant, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

**PARTIES**

5. Mr. Colon is a resident of Chicago, Illinois. He worked for the Defendants for approximately two years until December 10, 2014 at their Bedford, Illinois plant. He worked as an Operator making $11.65 per hour.

6. Since at least January 1, 2014, the Defendants Vegetable Juices, Inc. and NATUREX, Inc. have been corporations authorized to do business in Illinois, have been conducting business in Bedford, Illinois, and have continuously been and are now an employer engaged in interstate commerce or an activity affecting commerce, and it was an "employer" within the meaning of the ADA.

7. Since at least January 1, 2014 Defendants have employed more than fifteen (15) employees within the meaning of the ADA. In 2014 Defendants each employed more than 200 employees within the meaning of the ADA.

8. Since January 1, 2014 Mr. Colon was an employee of each of these Defendants within the meaning of the ADA and the Illinois Human Rights Act. Mr. Colon was also an

employee within the meaning of the Illinois worker's compensation laws and statutes, and Defendants were an employer within the meaning of those Illinois laws and statutes.

## PROCEDURAL BACKGROUND

9. On April 3, 2015, Mr. Colon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against each of the Defendants and in his Charges of Discrimination, Mr. Colon alleged violations of the ADA. Among the violations that Mr. Colon alleged in his Charges of Discrimination were that Defendants discriminated against him because of his disability, failed to accommodate him, and retaliated against him for requesting to be accommodated.

10. Defendants fired Mr. Colon on December 10, 2014.

11. Mr. Colon timely filed Charges of Discrimination with the EEOC alleging violations of the ADA against each of the Defendants..

12. The EEOC Charge of Discriminations that Mr. Colon filed were cross-filed with the Illinois Department of Human Rights. The Charges of Discrimination that Mr. Colon filed were timely filed with the Illinois Department of Human Rights.

13. In a Notice of Right to Sue dated March 9, 2016, the EEOC issued Mr. Colon a Notice of Right to Sue involving Vegetable Juices, Inc. In a Notice of Right to Sue dated March 22, 2016, the EEOC issued Mr. Colon a Notice of Right to Sue against NATUREX, Inc. True and correct copies of the EEOC Notices are attached hereto as Exhibit A and incorporated herein.

14. This action has been timely filed by Mr. Colon within ninety (90) days of Mr. Colon's receipt of the EEOC's Notices of Right to Sue.

15. Mr. Colon has fulfilled all conditions precedent to the institution of this lawsuit against the Defendants under the ADA.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

16. Paragraphs 1-15 of this Complaint are realleged and incorporated as though fully set forth herein.

17. When Mr. Colon was hired, he was qualified to work perform his job duties. At all pertinent times Mr. Colon was qualified to work in his job as an Operator.

18. While Mr. Colon worked at the Bedford, Illinois plant, he performed his job duties in a satisfactory manner.

19. The two defendants are joint employers. They jointly controlled Mr. Colon's work, they jointly directed his work, and they maintained a management staff that was integrated for purposes of supervising the day-to-day operations at that Bedford, Illinois plant. Martin Sanchez was the Human Resource Manager for both defendants.

20. An Hourly Employee Performance Review and Evaluation for the period from August 2012 to January 2013, was written for Mr. Colon. That Performance Review and Evaluation has two signatures on the last page and a date of February 14, 2013. That February 14, 2013 Performance Review and Evaluation rates Mr. Colon as "Meets Expectations" for all the "Performance Attributes," including for Quality, Quantity, Attendance/Dependability, Judgment, Teamwork, Initiative, Safety, and Good Manufacturing Practices, rates Mr. Colon with an "Overall Rating" of "Meets Expectations."

21. The February 14, 2013 Performance Review and Evaluation contains, among other statements, the following comments:

4

      a.      "There hasn't been any problems with GMP's. this is a very strong subject for Edgardo. Keep it up.";

      b.      "Edgardo is good at keeping communication with his supervisor when he needs a day off, or he is going to be late. Keep up the communication."; and

      c.      "Edgardo's work has not had any problems with quality. He is good at keeping in mind the rules of production and guidelines to work and produce a good product".

    22.    An Hourly Employee Performance Review and Evaluation was written for Mr. Colon covering the review period from January 2013 to January 2014. That Review and Evaluation has a date on the last page of February 13, 2014. In that Review and Evaluation, Mr. Colon was rated as "Meets Expectations" for all the "Performance Attributes," including for Quality, Quantity, Judgment, Teamwork, Initiative, Safety, and Good Manufacturing Practices, and Mr. Colon was given an overall "meets expectations" rating for that Review and Evaluation.

    23.    The February 13, 2014 Performance Review and Evaluation states, among other things: "Edgardo is good at keeping communication with his supervisor when he needs a day off, or he is going to be late. Keep up the communication. "At all pertinent times in 2014, Mr. Campos performed his job duties in a satisfactory manner.

    24.    In July 2014 Mr. Colon injured himself at work, and he filed a worker's compensation claim under the Illinois Worker's Compensation Act and statutes. Mr. Colon requested that he be paid worker's compensation benefits pursuant to the Illinois Worker's Compensation statutes.

25. In a November 10, 2014 Independent Medical Examination report from Dr. John Cherf of the Chicago Institute of Orthopedics, Dr. Cherf stated that he had conducted an examination of Mr. Colon. Dr. Cherf also stated, among other things in his November 10, 2014 report that his diagnosis was that Mr. Colon had "degenerative changes in his lumbar spine" and that this medical condition had occurred or existed at least before July 21, 2014.

26. Dr. Cherf sent a copy of his November 10, 2014 report to Defendants, and Defendants received Dr. Cherf's November 10, 2014 report on or about on November 19, 2014.

27. Since at least its receipt of Dr. Cherf's November 10, 2014 report, the Defendants were aware that Mr. Colon had been diagnosed with degenerative changes in his lumbar spine.

28. Dr. Cherf's November 10, 2014 report contained a question that was listed as Number 8 and that question stated as follows: "Has the injured worker reached maximum medical improvement (MMI) as it relates to the 7/21/14 work-related incident? If MMI has not been achieved, when do you expect the injured worker will reach MMI as it relates to the 7/21/14 work related injury?"

29. In response to Question No. 8, on Dr. Cherf's November 10, 2014 report, Dr. Cherf reported as follows: "Mr. Colon is currently three-and-a-half months post a work-related lumbar sprain/strain on July 21, 2014. He has not reached maximum medical improvement. I anticipate him reaching maximum medical improvement not later than five months post injury or not later than December 21, 2014."

30. Dr. Cherf's November 10, 2014 report contained a question that was listed as Number 7 and that question stated as follows: "What is his current work ability? (SEE JOB DESCSRIPTION) When do you expect that the injured worker will be able to return to full duty

6

work as it relates to the 7/21/2014 work related incident? What are his specific work restrictions at this time?"

32. In response to Question No. 7 on Dr. Cherf's November 10, 2014 report, Dr. Cherf reported the following: "Mr. Colon is currently three-and-a-half months post a work-related lumbar sprain/strain on July 21, 2014. He should be capable of returning to full time with a lifting restriction of 25 pounds. This lifting restriction should be removed in four weeks. If Mr. Colon does not feel he is capable of returning to work with these restrictions, a valid Functional Capacities Evaluation might be considered."

32. Between August and November 2014 Mr. Colon's doctors wrote doctor notes and status reports to Defendants asking that Mr. Colon, because of his medical condition, be accommodated, includin that he be given a leave of absence. Mr. Colon also requested that, because of his medical condition, he be accommodated, including being given a leave of absence.

33. By at least November 19, 2014 Defendants were aware of Dr. Cherf's November 10, 2014 diagnosis that Mr. Colon had degenerative changes in his lumbar spine, and Defendants were aware by at least November 19, 2014 that Mr. Colon and his doctors had requested that, because of his medical condition, he be accommodated.

34. Among the accommodations that Mr. Colon and his doctors requested was to be given time off from work, a leave of absence, and the extension of any time off from work and an extension of his leave of absence.

35. On November 21, 2014 Mr. Colon went to the Bedford, Illinois plant and spoke to Maria Avellano, the Human Resources Supervisor. On November 21, 2014 Mr. Colon and Maria Avellano spoke about the accommodations that Mr. Colon and his doctors were requesting for

7

him, including Dr. Cherf's recommendations in Dr. Cherf's November 10, 2014 report that Dr. Cherf did not anticipate Mr. Colon reaching maximum medical improvement until December 21, 2014.

36. During his conversation with Maria Avellano on November 21, 2014, Mr. Colon said:

   a. he did not want to have any problems with his work or job, or to lose his job;

   b. that he was willing to come in to work on November 24, 2014 and to work November 24, 2014;

   c. he was willing to return to work on November 24, 2014 and work within the restrictions that were described in Dr. Cherf's letter;

   d. he wanted and needed help, adjustments, or changes in his work such that he could have additional time off of up to thirty calendar days and, if he worked on November 24th, that he be assigned the first shift instead of the second shift; and

   e. he asked Maria Avellano what he should do.

37. During their conversation on November 21, 2014, Maria Avellano said:

   a. she was confused by the doctor letters that were provided to her, including by the November 10, 2014 letter from Dr. Cherf and a letter from Dr. Dixon;

   b. Mr. Colon should not come to work on November 24, 2014;

   c. she would investigate the situation;

8

    d.    after she completed her investigation, she would call Mr. Colon and tell him what to do; and

    e.    in the interim, until she investigated the situation and called Mr. Colon to tell him what to do, Mr. Colon should not come to work.

38.    On November 21, 2014, Mr. Colon gave Avellano his phone number and asked her to call him after she had investigated the situation and she told him what to do and whether he should come back to work.

39.    After telling Mr. Colon on November 21, 2014 that he should not come to work on November 24, 2014 and that she would investigate the situation and call him to tell him what to do, Avellano did not call Mr. Colon, and Avellano did not speak with Mr. Colon and tell him what to do. Nor did Avellano or anyone else from Defendants call Mr. Colon and speak with him. Nor did Avellano or anyone else from Defendants attempt to call Mr. Colon and speak with him.

40.    Defendants sent a December 4, 2014 letter to Mr. Colon stating, in pertinent part, that his status had been "changed to inactive status."

41.    Defendants sent a December 10, 2014 letter to Mr. Colon stating, in pertinent part, that his status "has changed from inactive to terminated."

42.    Dr. Cherf stated in his November 10, 2014 report that Mr. Colon should be given a Functional Capacities Evaluation. Prior to discharging Mr. Colon, Defendants did not:

    a.    request that Mr. Colon be given a Functional Capacities Evaluation;

    b.    did not consider giving Mr. Colon a Functional Capacities Evaluation; and

    c.    did not give Mr. Colon a Functional Capacities Evaluation.

43. As of November 21, 2014, the Defendants could have given Mr. Colon an extension of a leave of absence for thirty days to December 20, 2014.

44. Giving Mr. Colon an extension of a leave of absence for thirty days to December 20, 2014:

   a. was reasonable;

   b. would have been a reasonable accommodation;

   c. would not have created an undue hardship on Defendants;

   d. would not have involved or presented a direct threat to either Mr. Colon or other employees, or a direct threat to the health and safety of individuals in the workplace;

   e. would not have been prohibitively expensive for Defendants;

   f. would not have been unduly disruptive to the ordinary conduct of Defendants' business;

   g. would not have been unduly costly to Defendants;

   h. would not have fundamentally altered the nature or operation of Defendants' business; and

   i. did not involve an undue cost, or extensive or substantial disruption to the nature or operation of their business, or a fundamental alteration to the nature or operation of their business.

45. In November and December 2014 in deciding not to give Mr. Colon an extension of a leave of absence to December 21, 2014, Defendants:

   a. did not consider the nature and cost of that leave of absence;

   b. did not consider their overall financial resources;

      c.      did not consider the number of employees they employed; and

      d.      did not consider any potential or possible disruption, impact, or fundamental alteration of the nature or operation of their business.

46. In 2014 neither Defendants nor any of their agents, managers, or supervisors reviewed any information or documents concerning whether approving Mr. Colon for a leave of absence until December 20, 2014 would have been prohibitively expensive for them or would have been unduly disruptive to the ordinary conduct of their business.

47. As of November 20, 2014 Defendants:

      a.      were aware that Mr. Colon had requested a change in his workplace involving being extended a leave of absence;

      b.      were aware that Mr. Colon had requested an adjustment in his workplace involving taking a leave of absence;

      c.      were aware that Mr. Colon had requested an adjustment in his workplace involving being granted a thirty day leave of absence to December 20, 2014; and

      d.      had enough information about Mr. Colon's medical conditions to determine whether to approve Mr. Colon for a leave of absence until December 20, 2014.

48. In deciding to terminate Mr. Colon, Defendants did not decide that granting Mr. Colon a leave of absence until December 20, 2014 was either prohibitively expensive or would unduly disrupt the ordinary conduct of their business.

49. Mr. Colon was able to perform the essential functions of his job with a reasonable accommodation.

11

50. Among the accommodations Mr. Colon requested was to extend his leave of absence until December 20, 2014. Giving Mr. Colon a leave of absence from November 20, 2014 to December 19, 2014 or December 20, 2014 would not have been an undue hardship on Defendants.

51. Approving Mr. Colon's accommodation requests before November 21, 2014 was not prohibitively expensive for Defendants and was not unduly disruptive to the ordinary conduct of their business.

52. Approving Mr. Colon's accommodation requests before November 21, 2014 did not involve an undue hardship on PMC.

53. Approving Mr. Colon's accommodation requests before November 21, 2014 did not fundamentally alter the nature of Defendants' business, and did not involve an undue cost or extensive or substantial disruption to the nature or operation of their business, or a fundamental alteration to the nature or operation of their business.

54. After meeting with Mr. Colon on November 21, 2014, Defendants decided not to grant Mr. Colon any additional accommodations. In deciding not to grant Mr. Colon any accommodations, Defendants did not consider the nature and cost of the requested change, adjustment, and/or accommodation, their overall financial resources, the number of employees they employed, or the potential or possible disruption, impact, or fundamental alteration of the nature or operation of their business.

55. Despite Mr. Colon's requests for an accommodation, Defendants refused to accommodate him in late November 2014 and early December 2014, including by refusing to give him a leave of absence for thirty days.

56. In 2014 Defendants maintained a personnel policy under which employees were not permitted to work unless they were able to work full duty.

57. On December 10, 2014, Mr. Colon was fired. Mr. Colon was sent a letter that was dated December 10, 2014 informing him of his discharge.

58. Defendants submitted position statements to the EEOC that were dated May 8, 2015.

59. The reasons for discharge stated in the December 10, 2014 discharge letter are different than the reasons for discharge stated in Defendants' EEOC May 8, 2015 position statements.

60. As of November 2014 Mr. Colon was a qualified individual with a disability within the meaning of 42 U.S.C. §12101(2)(A), (2)(B), and 2(C) of the ADA.

61. As of November 2014 Mr. Colon had one or more impairments within the meaning of the ADA that substantially limited one or more of his major life activities within the meaning of the ADA. Mr. Colon also had a record of such an impairment.

62. Mr. Colon's impairments constituted a disability as that term is defined in the ADA. Mr. Colon had that impairment and disability for at least a year prior to November 20, 2014.

63. At all pertinent times, Mr. Colon was qualified to perform the essential functions of his job, with or without a reasonable accommodation, within the meaning of the ADA.

64. Since at least November 19, 2014 Defendants were aware that Mr. Colon had a disability within the meaning of the ADA.

65. Defendants were aware that Mr. Colon, his doctors, and Dr. Cherf had requested that Mr. Colon be accommodated.

66. Other employees who did not have a disability were extended leaves of absences beyond the leaves of absences Mr. Colon was extended.

67. Other employees who did not have a disability were accorded better terms and conditions of employment than Mr. Colon.

68. In requesting to be accommodated, Mr. Colon engaged in protected activity within the meaning of the ADA. Because of Mr. Colon's disability, Defendants discriminated against Mr. Colon regarding his terms and conditions of employment, refused to accommodate him, and retaliated against Mr. Colon because he requested to be accommodated pursuant to the ADA.

69. Defendants violated the ADA by discriminating against Mr. Colon, refusing to accommodate him, and retaliating against him for requesting accommodations and complaining about the discrimination and retaliation to which he was subjected, including discharging him.

70. By its conduct alleged herein, Defendants engaged in unlawful employment practices on the basis of Mr. Colon's disability and in retaliation for Mr. Colon's complaints about discrimination and Defendants' failure to accommodate him. Defendants engaged in this conduct in violation of the ADA.

71. Defendants knew and/or showed reckless disregard for whether their conduct violated the ADA. The reasons that Defendants gave for Mr. Colon's discharge and for denying him an accommodation were false.

72. The actions of Defendants were taken deliberately and intentionally and with malice and reckless indifference to Mr. Colon's civil rights.

73. The acts complained of were ratified, authorized, and permitted by Defendants and their officers, managers, and supervisors.

74. Because of Defendants' discriminatory actions, refusal to accommodate, and retaliatory actions, Mr. Colon was damaged and has suffered the loss of wages and benefits, humiliation, embarrassment, and other compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Colon respectfully requests that this Court enter judgment in his favor and against Defendants and requests that the Court:

A. Declare, decree, and adjudge that Defendants have violated the ADA;

B. Grant an injunction against Defendants and their officers, managers, and supervisors from violating the ADA and protecting Mr. Colon;

C. Enter appropriate injunctive relief against Defendants and their officers, managers, and supervisors to comply with the ADA and refrain from discriminating against and retaliating against and failing to accommodate Mr. Colon, and interfering with his rights and protections under the ADA and awarding appropriate injunctive relief;

D. Awarding Mr. Colon backpay, front pay, and other employment benefits he was denied or lost;

E. Order Defendants to pay compensatory and punitive damages in an amount sufficient to punish Defendants for their past discrimination and to deter them from continuing with their unlawful practices;

F. Award pre-judgment and post-judgment interest;

G. Award Mr. Colon his reasonable attorney's fees and costs; and

H. Award such other, additional and further relief as the Court deems appropriate under the circumstances, including nominal damages.

## COUNT II
## WRONGFUL DISCHARGE IN VIOLATION OF
## ILLINOIS PUBLIC POLICY

75. Mr. Colon repeats and re-alleges paragraphs 1-6, 8, 10, and 17-59 as if fully set forth herein.

76. This Court has jurisdiction over this Illinois retaliatory discharge public policy wrongful discharge claim by virtue of 28 U.S.C. §1367.

77. Mr. Colon was an employee of Defendants, and Defendants were an employer within the meaning of the Illinois workers' compensation laws and statutes and the Illinois Workers' Compensation Act. Mr. Colon was injured on the job in July 2014. He requested that Defendants pay him worker's compensation benefits under the Illinois Workers' Compensation Act.

78. Illinois public policy prohibits an employer from retaliating against an employee who has exercised his rights under the Illinois Workers' Compensation Act. Mr. Colon exercised his rights under the Illinois Workers' Compensation Act.

79. Illinois public policy and the Illinois Workers' Compensation Act, 820 ILCS 305/4(h) (herein, the "Act") prohibit an employer from interfering with an employee's workers' compensation rights and from discharging an employee because he has exercised his rights under that Act.

80. Defendants had a duty under Illinois law not to discharge Mr. Colon in violation of Illinois public policy.

81. At all relevant times, Defendants were an employer within the meaning of the Act as defined in 820 ILCS 305/1 et seq, and Mr. Colon was an employee within the meaning of that Act.

82. The reasons that Defendants have given for Mr. Colon's discharge were false.

83. Defendants violated a clear mandate of Illinois public policy by discharging Mr. Colon.

84. Defendants discharged Mr. Colon in retaliation for requesting to be paid workers' compensation benefits in violation of Illinois' public policy.

85. As a consequence of Defendants' wrongful discharge, Mr. Colon has been damaged, including suffering a loss of wages and benefits, and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Colon respectfully requests that this Court enter judgment in his favor and against Defendants and requests that:

A. Order Defendants to pay Mr. Colon backpay, wages, employment benefits, and other compensation, that he was denied or lost as a result of Defendants' actions, including prejudgment interest on such amounts;

B. Order Defendants to pay Mr. Colon compensatory damages, including for the emotional distress damages he suffered;

C. Order Defendants to pay Mr. Colon punitive damages;

D. Awarding Mr. Colon his costs; and

E. Awarding such other and further relief as the Court deems necessary and just.

## JURY TRIAL DEMAND

A jury trial is demanded on all counts which are triable by a jury.

Dated: May 24, 2016          Respectfully submitted,

                                         _____
                                         Marty Denis
                                         Bethany Hilbert
                                         Barlow, Kobata & Denis LLP
                                         525 West Monroe Street, Suite 2360
                                         Chicago, Illinois 60661
                                         (312) 648 – 5570
                                         Attorney No. 34721

                                         *Attorneys for Plaintiff Edgardo Colon Rodriguez*